Okay, I like the way you stood up and then sat down again so that we'll think it's someone else. As our country judge in Colorado used to say, you're still under oath. Good morning. Good morning, Your Honors. May it please the Court, I'm Ina Lipkin, representing the petitioner. We're arguing that the Board of Immigration Appeals erred in affirming the adverse credibility finding based on some very vague demeanor conclusions and alleged inconsistencies. Specifically, the demeanor finding based on the respondent's quote-unquote rote memorization is just not supported by the record. As we stated in our brief, there's plenty of case law that requires an immigration judge to give specific examples. But didn't the immigration judge in this instance note that first that it appeared to be memorized because it followed exactly the language of the declaration, and then to the extent of making a mistake that he later said there was something different but he stuck with the language of the declaration when he testified. And then the immigration judge noted that he was quick to answer and tell the story in direct but very halting in responding on cross, which caused the judge to question his credibility and his demeanor. It seems to me that it's kind of between a rock and a hard spot. If you're too consistent, then that's a basis not to believe you. If you're inconsistent, that's a basis not to believe you. I mean, what's the test? But that's not our standard. We're looking for substantial evidence. And you said that the I.J. My question was you said the I.J. didn't provide any reasons for the demeanor finding. And I don't think that's accurate from the record. You may say these findings are not sufficient or they're not valid based on the record, but the I.J. did make those findings with respect to demeanor. Well, the I.J. noted that, as Your Honor had stated, that on direct exam he seemed to provide more flowing testimony. But the reality of it is, in the setting of the immigration court hearing, his attorney, who he's comfortable with, who certainly prepared him for the hearing, is likely asking the same question asked during this preparation. So certainly he'd feel more comfortable to provide testimony. And it appears from the record that he was asked questions in a chronological order. So, you know, he is repeating what's in his application in the sense that he's going in order what is stated there. Whereas on cross, the government's going to jump from one area in the case file and business testimony as that attorney sees fit. But this is exactly what fact finders and jurors do. For example, that having been a trial judge myself and a trial lawyer, you know, a lot of times how we decide whether someone's telling the truth can be whether they're rolling their eyes or whether they're looking at someone. I mean, and jurors, you know, very frequently do all of those things. And so demeanor is clearly something that the person that is looking at the witness can articulate. And so there is something to review here, whether we look at it and say that does seem rote and it seems different here or not. But really, what did the I.J. point to that was rote other than saying it was rote? There wasn't really any example of sledding, you know, doing anything like that. Well, but she did point to the way the questions were answered and the inaccuracies that were stuck to in the declaration. But then it didn't have, you know, an explanation. I mean, the I.J. was making observations from demeanor based on what she saw. And so what you're arguing is that we should make a different demeanor determination when we are not seeing the witness testify. And that seems problematic. I don't think we're asking this panel to make a new demeanor finding. I think we're asking this panel to find that the I.J.'s demeanor finding was unsubstantiated. I think if there was one element in the testimony that might support the government's position regarding the I.J. That was something. It was sort of like if you're Catholic and they ask you, do you know what the Trinity is? You know, the Father, the Son, and the Holy Spirit. If you don't know that, you're probably not Catholic. Well, this. He didn't know anything. He didn't know anything about it. And he claimed his family had been active in it forever, and he couldn't recount the simplest things. Well, first of all, this court has stated that one cannot make an adverse credibility finding on the level of a petitioner's religious fervor or devotion. I don't have the case. I think you're right. I think the court has suggested some hesitation in making these determinations, at least in the context of religion, because a person could genuinely hold a religious belief and suffer persecution and maybe not fully understand all the tenets of the religion. But this is a little different in that he's avowing a political belief for which he was persecuted, for which he claimed he and his family were very involved for a very long period of time, but he couldn't articulate anything about those beliefs or this organization that he purportedly belonged to. I would disagree in the sense that he did explain that the tenets of the Congress Party were for social good, good works for the community, which he participated in and suffered persecution from. He knew the name of Mr. Luckey, his regional boss or person in charge of his party. Didn't he say that that person was the national president of the organization? He didn't know who the national president was, Sonia Gandhi. That's what he didn't know that the judge had a problem with. On the other hand, the record and his testimony show he was a low-level grassroots worker without a particularly high education, and he knew what was going around in his backyard, in his village, and that is what was important. He knew the work he participated in, that he volunteered for. He knew who his area president was. But he didn't talk about any of those things. He didn't talk about any volunteer work that he did. All he said was in very general terms that he was part of this group, the Congress, because they helped poor people. And when asked for details, he'd say, well, they'll come along and help you. They'll help you. They'll be by you. They'll stick with you. It was just very general. There were no details whatsoever and no explanation of anything that he did, not that I can recall from the record. If I'm missing it, please point it out to me. I will take a look, Your Honor. I can't recall that right now. However, he did explain the work that he did when he was questioned about his participation. Well, let's say sometimes there's things that could go either way. Let's say that the IJ had agreed with you and said, you know, this guy doesn't have much education. He gets very confused. And I really don't think it's a problem that he didn't know that he wasn't a high-ranking party member, that he wouldn't know any of these things, and so found in your favor and granted relief. And the government appealed. And the government was standing up here saying to me, well, look, if you can't be a member of the Congress and not know this, that, and the other, you know, I would probably be saying the same thing to the government, saying, well, but the IJ was listening, saw the person, and the IJ thought that he wasn't, you know, that he wasn't very intellectually complicated, that he was, you know, he didn't have that capacity and all of those things. And I would be telling the government, sorry, you know, the IJ found against you because the IJ was listening, and that seemed to make sense. So sometimes there's rulings that a court, when they're looking at the person, can go either way. And when it comes up here, we would say that's the person that's looking at them, and that's the person that they're entitled to deference. Fair enough. However, I'm contending that the petitioner did provide that kind of detail in his testimony. I did find the area in the administrative record, pages 91 and 92, where he said that his work was arranging events, urging others to join, and that was enough evidence to show that he participated in the party. There is no requirement that there's some minimal threshold of activities he should be involved in to qualify him as an actual bona fide member of the party. Do you want to save any time for rebuttal? Yeah, I was going to say that. Okay. Thank you. May it please the Court. John Holt for the Attorney General. Substantial evidence supports the adverse credibility finding with regard to demeanor. Petitioner asserts that the immigration judge made no findings with regard to demeanor. Counsel, it's a hypothetical proposition. Let's say I'm a judge, and the testimony comes in, and I say, I didn't believe a word he said. How do you establish substantial evidence to support that kind of a determination? Well, that's a conclusion, and there would have to be further findings if the judge said, I just didn't believe a word they said. So, standing alone, that comment would not be substantial evidence upon which an affirmance could rest? That's a hypothetical proposition. That's correct. It's a conclusion. So we would submit to the Court that the judge must articulate the reasons why he does not believe Petitioner. And that's what he did here, and he articulated four reasons. First of all, demeanor. Secondly, inconsistencies. Third, implausible. Well, you just told me that demeanor wouldn't, standing alone, count. You'd have to have something more than that. In other words, I could say, well, he rolled his eyes. I don't believe a word he said, he rolled his eyes. This Court has held, and the law is that the judge cannot just say, I didn't believe the demeanor. The judge must articulate reasons. And my point is that in six circumstances, the immigration judge articulated demeanor. Well, I'm not quarreling on the detail. I'm just trying to make the substantive point that some are more difficult to review than others. Yes, and we would submit to the Court this one's not difficult to review at all because I'll ask the Court if you've ever seen a time where the immigration judge identified six circumstances in his written opinion that related demeanor. For example, the first, on page 52, AR52, the immigration judge, the petitioner, testified with a flat affect, unemotional, particularly problematic in light of Petitioner was testifying about his mother being beaten twice and him being beaten once. So flat affect, that's demeanor. Secondly, halting, halting testimony. Petitioner, on their brief on page 16 and 17, acknowledged that the immigration judge specifically used the testimony was halting. And we, this Court has said that pace is a significant factor in terms of demeanor. The judge said he testified haltingly. And what did the judge contrast? Here it goes to the contradiction between the original statement and his further testimony. Sometimes I'll ask a law clerk a question and they answer haltingly. They're thinking, they're, am I, does that mean I'm not supposed to believe them? No, but what. And I can say that I don't believe them because they were halting? That just, look, I'm not trying to take a position here substantively on the outcome, and please don't presume that my questions are based on that. I'm just indicating that for me, as an appellate judge, it's difficult to review a credibility determination when it is made on highly subjective factors, not supported by objective truth and untruth. Well, here the immigration judge made the subjective factor that the objective determination that the testimony was halting. But then he articulated the reason why it came to that conclusion, and he contrasted the testimony of Petitioner on direct with the testimony on gross. That may be adequate and it may be very helpful to me, but the former is not. The mere fact that the judge said halting? Yes. We would submit that you have to take the halting observation in context with the explanation. And the point I make is it's very difficult to decide cases on pure credibility because, as a famous justice once said, one man's blasphemy is another man's lyric. And one man's halting may be an indication of credibility, and another man's halting may be just the opposite. Well, we would submit to the court that demeanor is only one of four factors. Right. And halting is only one of six factors. Right. So even if we remove halting, and, of course, that's in there and the judge explained, then we can go to the immigration judge on page 48 at note 3, notes the particular acted surprised when he was confronted with information regarding who was the president of the Congress party and that his answer was wrong. That's another demeanor observation. The immigration judge on page 52 of the record said the petitioner readily provided answers on direct. Again, that's demeanor, readily, quickly, smoothly. And this is another observation. Finally, two more. He said the petitioner seemed to have mentally forgotten his prior testimony or statement. And then, finally, on pages 55 and 56, that was at page 52. On pages 55 and 56, the petitioner observed that petitioner's demeanor was defensive. Okay. And he was confused. So in six specific circumstances, the court has argued. Well, let me turn your attention to one of them. Counsel has asked, what happened after 10 minutes? The respondent says, there were some people passing by, and they called my father and mother. He referred to these people as bystanders or passerbys, I think he called them. And the I.J. says, well, he said they were passerbys, but because he knew them, they couldn't be passerbys. Well, there's nothing inconsistent with being a passerby and one of them being somebody you knew. What's inconsistent about that? And yet the I.J. said, well, that's inconsistent. And that's one of them. There are others. I'm not going to take my colleague's time going through these one by one, but it just struck me, as Judge Callahan said earlier, the smell test, that somehow all of these kind of struck, some of these struck me as the I.J. almost stretching to look for credibility determinations that, to me, didn't seem so well supported. But the immigration judge said here in his written opinion, Your Honor, with regard to the specific contradiction that you're referring to. Now, is this one of those cases where the I.J. made his own determinations, or is this where he sends the record to another employee who listens and makes the written findings? No, the I.J. made his own conclusions, and he used this word with regard to that contradiction. The contradiction is not key. But what he said was it's the circumstances surrounding the contradiction that show that the testimony was regurgitated, memorized, repetition, rehearsed, mirrored of his prior statement. And what he was doing is he said with regard to whether the passersby informed the parents of the alleged beating or whether Kumar called the parents and told him. Why couldn't Kumar be a passerby? He could, but what was significant is that petitioner at the outset provided a declaration. In the statement, in the declaration, he said bystanders. At the beginning of his asylum claim, he said, I have some changes to make. And he said, the change I have to make is that Kumar is the person that told my parents. But then when he gets ready to testify. Is Kumar Avinash Singh? Yes, it is. Avinash Kumar. Yes, Your Honor. But when he's testifying on direct, he doesn't say Kumar. He lapses into his prior statement that the judge was concerned appeared to be memorized. And then he said passersby. The judge caught him and said, wait just a minute. You said Kumar. And he said, oh, it just came out. And it was that response with regard to the contradiction that Your Honor is focusing on the contradiction. And the judge said that's not key. It's his response. And similarly, with respect to his parents beating. That's the omission from his declaration. He didn't say anything in his declaration about his parents being beaten by political opponents the day that he left and came to the United States. And he was asked, you know, why didn't you put that in your statement? And, again, it wasn't necessarily the omission. It's his, and both the board and the immigration judge focused on this. It was his vacillating explanation of the reasons for the omission. Three different explanations. First of all, I should have mentioned it. Secondly, he goes to his mother's affidavit. He said, oh, the reason I didn't mention it, look at line three of my mother's affidavit. And there the mother says the people came in and slapped her. Well, that's entirely nonresponsive. That's not why he didn't put it. And then, finally, he said, well, maybe I just didn't remember it. So his vacillating explanations with regard to the omission are significant. And then, finally, the implausibility of his testimony. Your Honors have focused on this is a young boy at the age of 19 joined the Congress Party. For a decade he was a member of the Congress Party. When he was asked who is the president of the Congress Party nationwide, he said it was Singh and no relation to Singh and not Gandhi. So he was wrong. And then when he was confronted with his being wrong, he acted surprised. In summary, it's the totality of the circumstances, the demeanor evidence, the inconsistency, the implausibility of his testimony, and the omission that supports the adverse credibility finding of the agent. We ask you to deny the petition for review. Thank you, Your Honor. Thank you. Are there any further questions from the panel? Not on my part. All right. Thank you, Your Honor. Thank you. Your Honors, in response to the government's contentions, the government wants this court to affirm the unsupported speculation and conjecture of the immigration judge as to why the petitioner said, and not Mr. Kumar. He used both interchangeably. It would just be a stretch to find that he was maligning to the court. Don't you think that's a little bit odd when you call your father a passerby? It wasn't his father. Well, who's? An individual named Avinash. Avinash Singh? He called the father. He called the father. Okay. Yeah, so if it was his father, I would agree. That would be a little weird. But there's nothing in the record to show that's a close friend or a buddy of the petitioner. He didn't know the person. Later he was told by his family what his name was, and so he perhaps did not have it at the top of his head. So I think, again, speculation and conjecture just doesn't support the adverse credibility. So is there any presumption that applies when the IJ is taking testimony and all they have is the person's testimony and they're not finding it credible? I mean, you're suggesting that that means this court would be affirming speculation. But what are we supposed to do? We're not hearing the testimony. So, I mean, are you suggesting that the IJ is required to believe the testimony unless there's something else besides demeanor questions? Well, when there is no lack of actual inconsistency and corroboration as petitioner had provided, then, yes, the IJ does have to take his testimony as truthful and give it full weight. All right. Thank you. All right, thank you both for your argument. This matter will stand submitted.
judges: Lucero, Callahan, Bade